Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Spin Master Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPIN MASTER LTD.,<br><br>*Plaintiff*<br><br>v.<br><br>WWW.SPINMASTERSHOP.COM,<br><br>*Defendant* | **24-cv-7816 (JLR)**<br><br>**PRELIMINARY INJUNCTION ORDER** |

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiff or Spin Master** | Spin Master Ltd. |
| **Defendant** | www.spinmastershop.com |
| **Cloudflare** | Cloudflare, Inc., with an address of 101 Townsend Street, San Francisco, California 94107, and any and all affiliated companies, which operate a cloud-based web infrastructure platform, available at www.cloudflare.com, that enables capabilities to host static websites on a content delivery network |
| **Cosmotown** | Cosmotown, Inc., with an address of 1040 Noel Drive, Suite 100C, Menlo Park, California 94025, and any and all affiliated companies, which operates an ICANN accredited domain name registrar and web hosting company, available at www.cosmotown.com, that allows consumers to register domain names and create websites |
| **Shopify** | Shopify Inc., a Canadian company with an address of 150 Elgin Street, 8th Floor, Ottawa, ON K2P 1L4, Canada, and any and all affiliated companies, which operate a cloud-based e-commerce platform, available at www.shopify.com, that enables users to create online stores, manage their businesses, among other things |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, NY 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* application for: 1) a temporary restraining order; 2) an order restraining Defendant's Infringing Website (as defined *infra*) and Defendant's Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery |
| **Kanabar Dec.** | Declaration of Sachin Kanabar in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Spin Master Mark** | The mark covered by the U.S. Trademark Registration No. 3,882,310 for "SPIN MASTER" for goods and services in classes 9, 16, 20, 28 and 35 |
| **Plaintiff's Services** | Online retail services offered under the Spin Master Mark on the Spin Master Website |
| **Spin Master Products** | Well-known innovative children's lifestyle products and toys, including but not limited to, Kinetic Sand, Rubik's Cube, Swimways, Paw Patrol, Tech Deck and Rubble & |

2

|  | Crew, as well as under its licensed properties, such as Gabby's Dollhouse |
|---|---|
| **Spin Master Website** | https://shop.spinmaster.com/ |
| **Defendant's Products** | Products sold and/or offered for sale on Defendant's Infringing Website (as defined *infra*) that bear trademarks other than the Spin Master Mark, including, without limitation, a DeWalt branded drill, a Delta branded faucet, an Eddie Bauer branded jacket and Diesel branded jeans |
| **Defendant's Infringing Website** | Any and all fully interactive websites held by or associated with Defendant, its respective officers, employees, agents, servants and all persons in active concert or participation with Defendant, that it operates to communicate with consumers regarding its Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendant's Infringing Website located at www.spinmastershop.com, along with the domain names associated therewith |
| **Infringing Domain Name** | www.spinmastershop.com |
| **Defendant's Assets** | Any and all money, securities or other property or assets of Defendant (whether said assets are located in the U.S. or abroad) |
| **Defendant's Financial Accounts** | Any and all financial accounts associated with or utilized by Defendant or Defendant's Infringing Website (whether said accounts are located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group), Stripe Payments Canada, Ltd. ("Stripe"), Visa Inc. ("Visa"), American Express Company ("American Express"), Mastercard Inc. ("Mastercard"), Discover Financial Services, Inc. ("Discover"), Google LLC payment services (e.g. Google Pay), Apple Inc. payment services (e.g. Apple Pay), JPMorgan Chase Bank, NA ("Chase"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions Inc. ("PingPong"), Airwallex (Hong Kong) Limited ("Airwallex HK"), Airwallex (UK) Limited, Worldpay (HK) Limited ("Worldpay"), World First UK Ltd. ("World First"), Bank of China ("BOC"), Citibank N.A. ("Citibank") and Green Dot Bank and/or any entities affiliated with those listed herein holding Defendant's Assets |
| **Third Party Service Providers** | Any third party providing services in connection with Defendant's Infringing Website, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, any providing shipping and/or fulfillment services, website hosts, such as Cloudflare, Inc. ("Cloudflare"), |

3

|  | Cosmotown, Inc. ("Cosmotown"), Shopify Inc. ("Shopify") and/or domain name registrars |
|---|---|

WHERAS, Plaintiff moved *ex parte* on October 15, 2024 against Defendant for the following: 1) a temporary restraining order; 2) an order restraining Defendant's Website and Defendant's Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on October 16, 2024 (the "TRO"), which ordered Defendant to appear on October 30, 2024 at 11:30 a.m. to show cause why a preliminary injunction should not issue (the "Show Cause Hearing");

WHEREAS, on October 21, 2024, Plaintiff wrote a letter to the Court requesting modification and extension of the TRO, and on October 22, 2024, the Court granted Plaintiff's request which, *inter alia*, adjourned the Show Cause Hearing to November 14, 2024 at 11:30 a.m. ("October 21, 2024 Order");

WHEREAS, on November 4, 2024, pursuant to the alternative methods of service authorized by the TRO, Plaintiff attempted to serve the Summons, Complaint, TRO, all papers filed in support of the Application and the October 21, 2024 Order on Defendant's email address newsletters@email.spinmaster.com, however, the attempted service failed;

WHEREAS, on November 7, 2024, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application and the October 21, 2024 Order on Defendant's email address anthonylararoberth@hotmail.com, which Plaintiff obtained through expedited discovery provided by PayPal in accordance with the TRO;

WHEREAS, on November 14, 2024 at 11:30 a.m., Plaintiff appeared at the Show Cause Hearing, however Defendant did not appear.

5

WHEREAS, the Court has personal jurisdiction because the Served Defendant is subject to personal jurisdiction under CPLR § 302(a)(1) and exercising personal jurisdiction over the Served Defendant comports with the Due Process Clause of the U.S. Constitution. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) ("To determine whether jurisdiction exists over a non-domiciliary, we first consider whether the state's long-arm statute provides a statutory basis for jurisdiction, and if so, whether exercising personal jurisdiction would comport with due process.")

WHEREAS, the Served Defendant is subject to personal jurisdiction, as the New York long-arm statute provides a statutory basis for jurisdiction through its "transacting business" provision. *See* CPLR § 302(a)(1). "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 7 (N.Y. 2016). Under the first prong, "[e]xamination of a defendant's actions in New York is primarily a fact-based inquiry that requires an assessment of whether the non-domiciliary's activities in the state were purposeful." *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1238 (N.Y. 2023)[1]. "Purposeful activities, this Court has explained, are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*  To satisfy the second prong, "the plaintiff's cause of action must have an articulable nexus or substantial relationship with the defendant's transaction of business here." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017).  Here, the Served Defendant operates a fully interactive website through which U.S. consumers, including those in the state of New York, can

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

inquire and communicate with the Defendant and purchase goods from the Defendant. Those goods are in turn shipped to U.S. addresses, including to customers located in New York. Plaintiff's causes of action alleging trademark counterfeiting, infringement of registered trademarks, and false designation of origin, passing off and unfair competition have an "articulable nexus" with the Defendant's transaction of business in New York. Namely, Defendant's interactive website targeting and shipping to New York consumers repeatedly and prominently uses the Spin Master Mark and incorporates links to Spin Master's authentic social media and checkout pages.

WHEREAS, exercising personal jurisdiction over the Defendant comports with the Due Process Clause of the U.S. Constitution. "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023). "This inquiry usually proceeds in two steps -- an analysis of whether each defendant has minimum contacts with the forum state, and an analysis of whether exercising jurisdiction would comport with fair play and substantial justice." *Id.* Plaintiff has shown "minimum contacts" because the Defendant "deliberately chose" to direct activity towards the New York market and New York consumers. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) (finding minimum contacts where defendant "deliberately chose" to process wire transfers using New York's banking system, the "instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress"). Exercising jurisdiction here would also "comport with fair play and substantial justice." *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 269 (citation omitted). Because the Defendant's products are available

to be sold, and are likely sold in New York, the forum has an interest in the resolution of the dispute.

WHEREAS, "[t]o obtain a preliminary injunction, [a plaintiff] must show (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in [its] favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023).

WHEREAS, Plaintiff has established a likelihood of success on the merits. To establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendant's use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 101-102 (2d Cir. 2010). Plaintiff has introduced *prima facie* evidence of the validity of the Spin Master Mark as well as Plaintiff's ownership of the same. Plaintiff also offers evidence of Defendant's allegedly infringing website which repeatedly uses the Spin Master Mark, including in its domain name, as well as Plaintiff's own images and links to Plaintiff's authentic social media pages and checkout page. Plaintiff is also likely to prevail on its cybersquatting claim pursuant to the Anti-cybersquatting Consumer Protection Act of 1996 ("ACPA"). To prevail on an APCA claim, a plaintiff must demonstrate that (1) its marks were distinctive at the time the domain name was registered; (2) the infringing domain name complained of is identical to or confusingly similar to plaintiff's mark; and (3) the infringer has a bad faith intent to profit from that mark. *Webadviso v. Bank of Am. Corp.*, 448 F. App'x 95, 97 (2d Cir. 2011). Plaintiff has introduced evidence that the Spin Master Mark is distinctive and has been in continuous use for a substantial period of time;

that the allegedly infringing domain name contains the Spin Master Mark in its entirety; and that Defendants acted with intent to mislead consumers into believing Defendant's website was an authentic source of Spin Master Products.

WHEREAS, Plaintiff has sufficiently shown it is likely to suffer irreparable harm because there is injury to the inherent value of the Spin Master Mark, to Plaintiff's reputation for providing high-quality products, and to Plaintiff's Spin Master Brand and the goodwill associated therewith. Plaintiff has also shown the balance of hardships favors it, due to the hardship caused by the Defendant's infringement and the lack of any hardship to the Defendant in having to comply with copyright law. Finally, issuance of the injunction would serve the public interest because it would dispel public confusion and because the public has an interest in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality.

## **ORDER**

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

    a) Accordingly, Defendant is hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

        i. directly or indirectly infringing in any manner Plaintiff's Spin Master Mark;

        ii. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Spin Master Mark to identify any goods or services not authorized by Plaintiff;

        iii. using Plaintiff's Spin Master Mark, or any other marks that are confusingly

        similar to the Spin Master Mark, on or in connection with Defendant's business, Defendant's Infringing Website or any other website owned by Defendant, Defendant's Services and/or Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in Defendant's Products;

  iv. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendant and Defendant's commercial activities by Plaintiff;

   v. engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein;

  vi. engaging in any other actions that constitute unfair competition with Plaintiff;

 vii. engaging in any other act in derogation of Plaintiff's rights;

viii. from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with any computer files, data, business records, documents or any other records or evidence relating to Defendant's Infringing Website, Defendant's Assets moving from or to Defendant's

    Financial Accounts, and/or any use of the Spin Master Mark in connection with Defendant's manufacturing, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Defendant's Products;

  ix. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendant's Assets from or to Defendant's Financial Accounts until further ordered by this Court;

  x. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

  xi. linking, selling and/or operating Defendant's Infringing Website;

  xii. registering, trafficking in or using any domain names that incorporate any of Plaintiff's Spin Master Mark, or any colorable imitation thereof, including the Infringing Domain Name; and

  xiii. knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs I(A)(i) through I(A)(xii) above and I(B)(i) through I(C)(i) through I(C)(ii) below.

b) Accordingly, Defendant and all persons in active concert and participation with Defendant who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this

action or until further order of the Court:

   i. secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendant's Assets from or to Defendant's Financial Accounts.

c) Accordingly, Defendant and all persons in active concert and participation with Defendant who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

   i. providing services to Defendant, including, without limitation, those relating to the continued operation of Defendant's Infringing Website;

   ii. permitting the transfer, sale and/or assignment of Defendant's Infringing Website; and

   iii. instructing, aiding, or abetting Defendant and/or any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(xii) above.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) within five (5) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach Defendant's Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include,

    at minimum, identifying information for Defendant, contact information for Defendant (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of Defendant's Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and Defendant shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

   b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Defendant shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

   c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control, relating to any and all of Defendant's Financial Accounts, including, but not limited to, documents and records relating to:

      i. account numbers;
      ii. current account balances;
      iii. any and all identifying information for Defendant and/or Defendant's Infringing Website, including names, addresses and contact information;

    iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of Defendant's Financial Accounts;

    v. any and all deposits and withdrawals during the previous year from each and every one of Defendant's Financial Accounts and any and all supporting documentation, including, but not limited to, documents sufficient to identify the geographic location(s) of any consumers from which deposits were sent, deposit slips, withdrawal slips, cancelled checks and account statements; and

    vi. any and all wire transfers into each and every of Defendant's Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the geographic location(s) of the transferor(s), the identity of the beneficiary's bank and the beneficiary's account number.

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control relating to Defendant's Infringing Website, including, but not limited to, documents and records relating to:

    i. account details, including, without limitation, identifying information and account numbers for any and all accounts or websites that Defendant has ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

   ii. the identities, location and contact information, including any and all e-mail addresses of Defendant that were not previously provided pursuant to Paragraph V(C) of the TRO;

   iii. the nature of Defendant's businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendant's Infringing Website, a full accounting of Defendant's sales history and listing history under Defendant's Infringing Website and Defendant's Financial Accounts with any and all Financial Institutions associated with Defendant's Infringing Website; and

   iv. Defendant's use of the Spin Master Mark and/or marks that are confusingly similar to, identical to and constitute an infringement of the Spin Master Mark.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to Defendant if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where Defendant will be able to download a PDF copy of this Order to Defendant's e-mail addresses, newsletters@email.spinmaster.com and anthonylararoberth@hotmail.com.

5. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed

by the following means:

a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

b) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cloudflare, Inc. will be able to download a PDF copy of this Order via electronic mail to legal@cloudflare.com;

c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Cosmotown will be able to download a PDF copy of this Order via electronic mail to abuse@cosmotown.com;

d) delivery of: (i) a PDF copy of this Order, or (iii) a link to a secure website where AliPay will be able to download a PDF copy of this Order via electronic mail to us_ipr_tro_requests@alipay.com;

e) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Stripe Payments Canada, Ltd. will be able to download a PDF copy of this Order via electronic mail to notices@stripe.com;

f) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Visa Inc. will be able to download a PDF copy of this Order via electronic mail to businessconduct@visa.com;

g) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where American Express Company will be able to download a PDF copy of this Order via electronic mail to amexsru@aexp.com;

h) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where

16

      Mastercard Inc. will be able to download a PDF copy of this Order via electronic mail to ipinquiries@mastercard.com;

i) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Discover Financial Services, Inc. will be able to download a PDF copy of this Order via electronic mail to civilsubpoena@discover.com;

j) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Apple, Inc. will be able to download a PDF copy of this Order via electronic mail to lawenforcement@apple.com;

k) delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Google LLC will be able to download a PDF copy of this Order via electronic mail to google-legal-support@google.com;

l) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where JPMorgan Chase Bank, NA will be able to download a PDF copy of this Order via electronic mail to maxwell.taylor@jpmchase.com;

m) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com;

n) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com;

o) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex (Hong Kong) Limited and Airwallex (UK) Limited will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com;

p) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Worldpay (HK) Limited will be able to download a PDF copy of this Order via electronic mail to support@worldpay.com;

q) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where World First UK Ltd. will be able to download a PDF copy of this Order via electronic mail to complaints@worldfirst.com;

r) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Bank of China will be able to download a PDF copy of this Order via electronic mail to service.at@bankofchina.com;

s) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Citibank N.A. will be able to download a PDF copy of this Order via electronic mail to alyssa.mitchell@citi.com, renae.a.rodriguez@citi.com and lsi@citi.com; and

t) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Green Dot Bank will be able to download a PDF copy of this Order via electronic mail to IR@greendot.com.

6. As sufficient cause has been shown, such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to Defendant, Third Party Service Providers and Financial Institutions through the pendency of this action.

7. Defendant is hereby given notice that it may be deemed to have actual notice of the terms of this Order and any act by Defendant in violation of this Order may be considered and prosecuted as in contempt of this Court.

8. The $5,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

9. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

10. Any Defendant that is subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this __14__ day of __November__, 2024, at __12:00__ _p_.m.
New York, New York

_Jennifer Rochon_
HON. JENNIFER L. ROCHON
UNITED STATES DISTRICT JUDGE